United States Department of Justice
Office of the United States Trustee
1100 Commerce St.  Room 976
Dallas, Texas 75242
(214) 767-1075

Erin Marie Schmidt,
for the United States Trustee

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § § | |
| **James Varga,** | § § | CASE NO:   21-41656-ELM-7 |
| | § § | |
| **Defendant** | § | |
| | § § § § | |
| **William T. Neary, United States Trustee for Region 6,** | § § § | |
| **Plaintiff** | § § | **Adv. Proc. No.** |
| v. | § § | |
| **James Varga,** | § § § | |
| **Defendant.** | § | |

**United State Trustee's Complaint Objecting to Discharge**

TO THE HONORABLE EDWARD LEE MORRIS, U.S. BANKRUPTCY JUDGE:

William T. Neary, the United States Trustee for Region 6 ("United States Trustee"), objects to the discharge of James Varga.  The United States Trustee would show:

**Filing Fee**

1. The United States Trustee is not required to submit a fee because "no fees under this [Bankruptcy Court Miscellaneous Fee] schedule shall be charged to federal agencies." *Bankruptcy Court Miscellaneous Fee Schedule, Appendix to* 28 U.S.C. § 1930.

**Jurisdiction and Venue**

2. The Court has subject matter jurisdiction over discharge complaints. 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the *Standing Order of Reference* (defining subject matter jurisdiction), 28 U.S.C. § 157(b)(2)(J)(defining core matters).

3. The United States Trustee has standing to file a discharge complaint. 11 U.S.C. § 727(c)(1).

**Allegations Common to All Counts**

General background regarding bankruptcy filing

4. On July 13, 2021 ("Petition Date"), James Varga filed a voluntary chapter 7 petition in the United States Bankruptcy Court for the Northern District of Texas, commencing case no. 21-41656-ELM-7.

5. Shawn Brown is the chapter 7 trustee.

6. Mr. Varga appeared at and testified under oath at the September 21, 2021 and November 17, 2021 § 341 meetings.

7. The deadline for parties to object to discharge under § 727 of the Bankruptcy Code was extended until December 21, 2021.

8. On November 5, 2021, the United States Trustee examined Mr. Varga under oath at a Bankruptcy Rule 2004 examination ("2004 exam").

Mr. Varga signs bankruptcy paperwork under penalty of perjury

9. Mr. Varga signed his bankruptcy petition under oath, declaring that "I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct."

10. On August 4, 2021, Mr. Varga signed his *Declaration About an Individual Debtor's Schedules,* which constitutes his acknowledgment that "[u]nder penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct."

11. On August 4, 2021, Mr. Varga signed his original statement of financial affairs ("Original SOFA") under penalty of perjury, declaring that he had "read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct."

12. On November 2, 2021, Mr. Varga signed amended statement of financial affairs ("Amended SOFA") under penalty of perjury.

13. On August 4, 2021, Mr. Varga signed his Chapter 7 Means Test ("Means Test") under penalty of perjury, declaring that "the information on this statement and in any attachments is true and correct."

Assets and liabilities

14. Schedule A/B avers that Mr. Varga owns real estate valued at $175,816.00 and personal property valued at $92,140.00.

15. Schedules D and E/F aver that Mr. Varga owes $414,801.00 in secured claims, zero priority unsecured claims, and $13,633,374.74 in general unsecured claims.

Mr. Varga's business activities: general overview

16. Mr. Varga incurred the majority of these general unsecured claims through his real estate businesses.

17. Before the bankruptcy filing, Mr. Varga was the central principal for a group of real estate investment and development companies which raised capital for various real estate projects.

18. Much of the capital for these real estate businesses came from individuals.

19. Partners W/ Benefits, LLC ("PWB") was the holding or umbrella company.

20. Partners W/ Benefits Property Group, LLC ("PWB Property Group") was "[e]stablished to acquire properties at a discount that need rehabilitation and provide accurate property revaluations, etc." Rule 2004 Exam UST-18.

21. Partners W/ Benefits Lending, LLC ("PWB Lending") brought "loan programs to…clients for rehabilitation, rental properties, and/or cashout[s] to expand their real estate portfolio[s]." *Id*.

22. R3 ResiCom Development & Construction, LLC provided project management services. *Id*.

23. Regal REI Services, LLC was intended to hold real estate investments. *Id*.

24. Before the bankruptcy filing, Mr. Varga was listed in state corporate filings as a manager or agent for the following limited liability companies:

a. ATT Medical-HAM, LLC;

b. CBD Heavenly Spa, LLC;

c. Community of Three Oaks, LLC;

d. Como-Lake Residence Fund, LLC;

e. Como-Lake VS PWB-PG, LLC;

f. Keep Calm Naturally Healing, LLC;

g. Keep Calm Water Supply, LLC;

h. Lake Como Center, LLC;

i. Linwood Townhomes Community;

j. Partners W/ Benefits Inv. Holdings, LLC;

k. PWB Development & Construction, LLC;

l. PWB Development Fund, LLC;

m. PWB HRLS-HAM, LLC;

n. PWG-IHG Benefit Assurance, LLC;

o. PWG-PG-IHG, LLC;

p. R3 Resicom Developments & Construction, LLC;

q. Regal REI Services, LLC;

r. Sparkit Marketing & Consulting, LLC;

  s. Texas Trip Aim Holding Group, LLC;

  t. We're Home Staging and Décor, LLC;

  u. Partners W/ Benefits Property Group, LLC; and

  v. Sparkit! Sales & Marketing Agency, LLC.

Mr. Varga's Business Activities: Not Disclosed on Original Bankruptcy Filings

25. Mr. Varga disclosed no limited liability companies or any other businesses on Schedule A/B.

26. Mr. Varga disclosed no limited liability companies or any other businesses as co-debtors on Schedule H.

27. Mr. Varga checked "no" in response to Original SOFA 27, which asks, "[w]ithin 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to….a limited liability company (LLC) or limited liability partnership (LLP)?"

28. Mr. Varga discussed some of his limited liability companies at the September 21, 2021 § 341 meeting.

29. Three days before the 2004 Exam, Mr. Varga filed an Amended SOFA disclosing all but one the businesses referenced in paragraph 30 in response to Amended SOFA 27.

Mr. Varga's business activities: pre-petition litigation

30. Before the filing of his bankruptcy petition, Mr. Varga and some of his former businesses were listed as co-defendants in various state court lawsuits.

31. Mr. Varga disclosed only one lawsuit in response to Original SOFA 9, which asks, "[w]ithin 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding:"

> 9. Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?
> List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.
>
> ☐ No
> ☒ Yes. Fill in the details.
>
> | Case title | Nature of the case | Court or agency | Status of the case |
> |---|---|---|---|
> | Wells Fargo | | Court Name / Number Street / City State ZIP Code | ☐ Pending ☐ On appeal ☐ Concluded |
> | Case number 4:17-cv-00265-Y | | | |

32. Some of these state court plaintiffs appeared at Mr. Varga's section 341 meetings to ask questions.

33. Mr. Varga disclosed two additional lawsuits on Amended SOFA 4:

   a. *Mudd et al v. Varga et al,* Case No. 352-317210-20, 17th District Court of Tarrant Count; and

   b. *Frosto et al v. Varga et al,* Case No. 252-317210-20, 352nd District Court of Tarrant County.

Mr. Varga's business activities: Sparkit! Sales and Marketing Agency, LLC

34. According to the Texas Secretary of State, Sparkit! Sales & Marketing Agency, LLC was formed January 22, 2021 with Isabel Portillo as the registered agent and Mr. Varga as the registered member.

35. Mr. Varga did not disclose a membership interest in Sparkit! Sales & Marketing Agency, LLC on his amended SOFA 27.

36. When asked at the 2004 Exam whether he currently owned any businesses, Mr. Varga answered, "[r]ight now, I don't own any other companies." 2004 Exam Tr. 18:5-11.

37. Mr. Varga testified at the 2004 Exam that he has been working as an independent contractor for Sparkit! Sales & Marketing Agency, LLC, which he claimed was owned by Isabel Portillo. 2004 Exam Tr. 134:22-23; 135:3-7.

38. When asked if he owned Sparkit! Sales & Marketing Agency, LLC, Mr. Varga responded:

```
A    Well, I was the registered agent to help her
open the company.  Okay.  At the registered level.  And
then I'm just like a 1099 if I can go out and, you know,
help her get any business or anything I get a small
commission.  And it was really opened to where she was
going to try to go into the construction cleanup arena,
doing new construction cleanup, but then she changed her
mind.
```

2004 Exam Tr. 134:3-12.

Mr. Varga's 2021 gross earnings

39. Mr. Varga averred on Schedule I he was unemployed as of the Petition Date and that he received $2,876.00 each month in unemployment benefits.

40. Mr. Varga averred on the Means Test that he only received unemployment income in the six months prior to the Petition Date.

41. Mr. Varga averred on Original and Amended SOFA 4 that he earned zero gross income in the period January 1, 2021, through the Petition Date.

42. Mr. Varga averred on Original and Amended SOFA 5 that he only grossed $16,994.00 in unemployment income in the period January 1, 2021, through the Petition Date.

43. $45,240.42 was deposited into Mr. Varga's personal Prosperity checking account ending in 7373 ("Prosperity 7372[1]") from January 6, 2021, through May 20, 2021:

| Date | Deposit | Notes |
|---|---|---|
| 1/6/2021 | $ 5,000.00 | Deposit |
| 1/11/2021 | $ 473.35 | Transfer from X5480 - consulting fee 1099 |
| 2/17/2021 | $ 600.00 | Transferred from X5502 |
| 2/9/2021 | $ 500.00 | Transferred from X4101 |
| 3/1/2021 | $ 200.00 | Transferred from X4101 |
| 3/1/2021 | $ 5,000.00 | Deposit |
| 3/5/2021 | $ 3,000.00 | Transferred from X5715 "TBD" |
| 3/8/2021 | $ 3,838.26 | Transferred from X5715 "Jv- Com% Earned 1099" |
| 3/9/2021 | $ 7,000.00 | Transferred from X5715 "Com%" |
| 3/12/2021 | $ 100.00 | Deposit |
| 3/19/2021 | $ 5,000.00 | Transferred from X5715 "Draw on Com% Jv" |
| 3/26/2021 | $ 5,000.00 | Deposit |
| 4/1/2021 | $ 3,000.00 | Deposit |
| 4/1/2021 | $ 5,000.00 | Deposit |
| 5/20/2021 | $ 1,528.81 | Deposit |

44. Mr. Varga admitted at the 2004 Exam that he received income from various "side jobs" in 2021. 2004 Exam Tr. 17:18-20.

Mr. Varga's 2020 gross income

---

1.
[1] 2004 Exam Exhibit 31.

45. Mr. Varga averred on Original and Amended SOFA 4 that he grossed only $7,916.00 in calendar year 2020.

46. Mr. Varga averred on Original and Amended SOFA 5 that the only additional income he received in calendar year 2020 was unemployment of $7,916.00.

47. According to his 2020 federal income tax return, Mr. Varga reported total gross income of $27,000.00.

Mr. Varga's other names

48. Mr. Varga did not list on the Petition any other names that he had used in the past eight years.

49. Mr. Varga is also known to business associates as "Jimmy Varga."

50. Mr. Varga has also identified himself as "James Varga III."

Storage units

51. Mr. Varga checked "no" in response to Original and Amended SOFA question 22, which asks, "[h]ave you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?"

52. Mr. Varga did not disclose the liquidation of the contents of any storage facilities on Original or Amended SOFA 10, which asks, "[w]ithin 1 year before you filed for bankruptcy, was any of your property repossession, forecloses, garnished, attached, seized, or levied?"

53. Mr. Varga testified at the 2004 examination that he was currently renting a storage unit at the time to store papers. 2004 Exam Tr. 73:6-15; 73:23-24.

54. Mr. Varga also testified that some of his old computers were put into storage but that the storage unit had been liquidated in 2020 for non-payment. 2004 Exam Tr. 75:4-9.

55. Mr. Varga also testified that another computer server was also currently in a specialized IT storage facility whose name he could not remember. 2004 Exam Tr. 75:23-76:8.

56. Mr. Varga checked "no" in response to Original and Amended SOFA question 21, which asks, "[d]o you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?"

Homestead

57. Mr. Varga averred on Schedule A/B that his homestead located at 4215 Southcrest Drive, Arlington, Texas ("4215 Southcrest") was valued at $175,816.00.

58. Mr. Varga averred on Schedule A/B that Wells Fargo is owed $125,000.00 on its note secured by 4215 Southcrest.

59. Mr. Varga testified at his Rule 2004 Exam that neither he nor his wife had paid Wells Fargo on its note for the past nine years. 2004 Exam Tr. 29:2-3.

60. Mr. Varga testified the 2004 Exam that he believed 4215 Southcrest was worth only $55,000.00 because of flood damage. 2004 Exam Tr. 32:14-15.

### Count One: False Oath

61. The United States Trustee realleges and incorporates the allegations contained in paragraphs 1 through 60.

62. The Bankruptcy Code provides that the Court shall grant the debtor a discharge unless the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account. 11 U.S.C. §727(a)(4)(A).

63. To prevail on a claim under section 727(a)(4)(A), an objecting plaintiff must prove by a preponderance of the evidence "that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case." *Judgment Factors, L.L.C. v. Packer (In re Packer),* 816 F.3d 87, 94 (5th Cir. 2016).

64. To warrant denial of discharge under section 727(a)(4)(A), a false oath must relate to a material fact. The materiality of omitted information is "not based solely on the value of the item omitted or whether it was detrimental to creditors," but instead on whether it bears "a relationship to the bankrupt's business transactions or estate, or concern[s] the discovery of assets, business dealings, or the existence and disposition of his property." *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir. 1992)(analyzing materiality of non-disclosure). False statements are material because they relate to "the discovery of assets" and "the existence and disposition of [their] property." *Id.* at 174.

65. A statement contained in a debtor's schedules or statement of financial affairs or the omission of assets from the same may constitute a false oath for purposes of section 727(a)(2)(A). *Id.* at 178. Disclosure of this information may lead to the discovery of other assets and is necessary to the transparency of the bankruptcy process. *Id.* at 177-78. "Full disclosure of assets and liabilities in the schedules…is essential" to ensure that the chapter 7 trustee and creditors have "'adequate information…without need for investigation to determine whether the information provided is true.'" *Id.* at 179 (citations omitted).

66. Mr. Varga attested to the truth of his Schedules, Means Test, and Original and Amended Statements, both by signing them under penalty of perjury and by testifying under oath that they were accurate at his creditors meeting. "It is well established that, because statements made by a debtor in his schedules and statements, and at his meeting of creditors, are signed under pains and penalties of perjury, they constitute 'oaths' for the purposes of § 727(a)(4)(A)." *Kaler v. Charles (In re Charles)*, 474 B.R. 680, 684 (B.A.P. 8th Cir. 2012); *accord In re Retz*, 606 F.3d 1189, 1196-97 (9th Cir. 2010).

67. Mr. Varga seeks to discharge a staggering $13.6 million in general unsecured claims. Most of this debt arose as a direct consequence of his pre-petition business dealings.

68. Any party seeking to understand Mr. Varga's pre-petition debt must also understand the structure and operation of these businesses.

69. Yet Mr. Varga's petition, schedules, and original statements provide no hint as to these businesses.

70. Similarly, Mr. Varga did business under various names, including Jimmy Varga and James Varga, III. None of these names are disclosed on the Petition.

71. Mr. Varga was a named defendant in at least two state court lawsuits in the year before the filing of his bankruptcy.

72. These lawsuits arose because of Mr. Varga's business dealings.

73. But the Original SOFA only disclosed only a single lawsuit related to his homestead.

74. Mr. Varga continues to hide his more recent business dealings, including a newly formed limited liability company that was formed in January 2021.

75. Mr. Varga testified under oath at the 2004 Exam that he was strictly a 1099 employee with no ownership interest in Sparkit! Marketing & Advertising, LLC.

76. However, Mr. Varga is listed as a managing member on the Texas Secretary of State documents.

77. Similarly, the only pre-petition 2021 income Mr. Varga disclosed on the Means Test and Statements were unemployment benefits even though his bank deposits show that he received other income in the six months before the Petition Date.

78. Mr. Varga understated his income on both his original and amended statements.

79. He claimed to have received no income from salary or wages in 2021. However, Mr. Varga deposited approximately $45,000 into Prosperity 7373 in the first half of 2021.

80. Mr. Varga was also receiving unemployment benefits during this time.

81. Mr. Varga also disclosed receiving only $7,916.00 of gross income for 2020 on SOFA 4 when his 2020 federal income tax return shows that he grossed $27,000.00.

82. Mr. Varga made other false oaths on his schedules and statements.

83. For example, Mr. Varga affirmatively answered "no" in response to statement questions asking about storage units or property held for others.

84. Yet Mr. Varga claimed he could not fully comply with a Rule 2004 records request because he could not access certain documents held in storage.

85. He also admitted to storing a computer server in a secure location at the Rule 2004 examination, but this server's whereabouts are not disclosed on the statements.

86. Mr. Varga also averred on Schedule A/B that his home was worth $175,816.00 but then later testified at his 2004 Exam that its actual value was $55,000.00.

87. False oaths are fraudulent if the debtor knew they were false at the time they were made and made them with the purpose of deceiving creditors. *Cadle Co. v. Pratt* (*In re Pratt*)*,* 411 F.3d

561, 566 (5th Cir. 2005)(citations omitted). The plaintiff must prove that a debtor had actual intent to defraud creditors; constructive intent is insufficient. *In re Dennis,* 330 F.3d at 701. Actual intent may be shown by circumstantial evidence, which may include a debtor's "reckless indifference[] to the truth." *In re Sholdra,* 249 F.3d at 382.

88. Mr. Varga's false statements were intentional as shown by his reckless indifference to the truth in his first set of schedules and statements.

89. While Mr. Varga amended his statements, these still contained numerous inaccuracies, including those regarding his income, outside storage units, and his business interests. *See Neary v. Streckmann (In re Streckmann),* Case No. 12-3099, Slip Op. at *7 (Bankr. N.D. Tex. July 11, 2013)(denying discharge for false oath).

90. Accordingly, Mr. Varga's discharge should be denied for false oath under § 727(a)(4)(A).

**Count Two: Concealment of Assets under 11 U.S.C. § 727(a)(2)**

91. The United States Trustee realleges and incorporates the allegations contained in paragraphs 1 through 60.

92. Section 727(a)(2) provides that the Court may deny a discharge if the debtor has:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2).

93. In the six months prior to the filing of his bankruptcy petition, Mr. Varga formed a new

limited liability company called Sparkit! Sales & Marketing Agency, LLC.

94. However, he did not list his ownership interest in this new limited liability company on his Schedules or SOFA.

95. Mr. Varga also denied having an ownership interest in this company at the 2004 Exam.

96. Mr. Varga's failure to disclose his membership interest in Sparkit! Sales & Marketing Agency, LLC constitutes concealment of property of the estate as of the petition date.

97. Mr. Varga also concealed the pre-petition income that he received in 2021.

98. Approximately $45,000 was deposited into Prosperity 7373 in the first half of 2021.

99. Mr. Varga was also receiving unemployment benefits during this time, which may explain why he did not disclose this income.

100. Such failure to disclose the receipt of this income may constitute concealment of Mr. Varga's property in the one year period before the filing of his bankruptcy case.

101. Accordingly, Mr. Varga's discharge should be denied for concealment of assets under § 727(a)(2).

## Conclusion

WHEREFORE, the United States Trustee respectfully respects this Court enter judgment in favor of the United States Trustee and deny the Defendant a discharge under 11 U.S.C. §§ 727(a)(4)(A) and (a)(2).

| | |
|---|---|
| DATED: December 21, 2021 | Respectfully submitted<br>WILLIAM T. NEARY<br>UNITED STATES TRUSTEE<br><br>/s/ Erin Marie Schmidt<br>Erin Marie Schmidt<br>Texas State Bar No.24033042<br>Office of the United States Trustee<br>1100 Commerce St. Room 976<br>Dallas, Texas 75242<br>Erin.Schmidt2@usdoj.gov<br>(214) 767-1075 |